Dean C. Waldt, Esq.
Mariah Murphy, Esq.
Christopher Corsi, Esq.
**BALLARD SPAHR LLP**
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey  08002-1163

*Attorneys for Defendants Ballard Spahr LLP and Mariah Murphy*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Peter DiPietro, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:11-cv-05110 (NLH) |
| | : | |
| v. | : | Return Date: January 3, 2012 |
| | : | |
| Landis Title Company; Renie Geuld, | : | |
| employee of Landis Title Company; Ballard | : | |
| Spahr, LLP; Mariah Murphy, Associate of | : | |
| Ballard Spahr; | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW OF DEFENDANTS BALLARD SPAHR LLP AND MARIAH MURPHY IN SUPPORT OF THEIR MOTION TO  DISMISS THE PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

Page

I.     INTRODUCTION...................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................... 4

III.   LEGAL ARGUMENT................................................................................ 6

       A.    Standard of Review................................................................................ 6

       B.    The Rooker Feldman Doctrine Bars DiPietro's Claims ......................... 8

       C.    New Jersey's Preclusionary Doctrines; Res Judicata and Entire
             Controversy Preclude DiPietro's Claims.............................................. 9

       D.    DiPietro Has Failed To Plead Any Facts Supporting His Assertion That
             The Law Firm Defendants Conspired With Newfield To Hide Certain
             Documents Or Conspired With Newfield To Violate Various Federal And
             State Laws Regarding The Issuance Of His Loan ................................ 11

       E.    DiPietro Has Failed To Sufficiently Plead Any Facts Supporting A Claim
             Of Fraud Against The Law Firm Defendants ....................................... 14

       F.    DiPietro Has Failed To Sufficiently Plead Any Facts Supporting A Claim
             Of Civil Conspiracy Against The Law Firm Defendants ..................... 16

       G.    DiPietro Has Failed To Sufficiently Plead Any Facts Supporting A Claim
             For Breach Of A Duty Of Care Against The Law Firm Defendants .................. 18

       H.    DiPietro Has Failed To Sufficiently Plead Any Facts Supporting A Claim
             Of Racketeering Against The Law Firm Defendants ........................... 19

IV.    CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)................................................................6, 7, 19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................6, 7, 19

*Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005)............................................................................8

*Federated Dep't. Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981)............................................................................9

*Givens v. Homecomings*,
    278 Fed. Appx. 607 (6th Cir. 2008)....................................................8

*Gutman v. Howard Sav. Bank*,
    748 F. Supp. 254 (D.N.J. 1990)........................................................16

*Harris v. Brody*,
    317 Fed. Appx. 153 (3d Cir. 2008)....................................................9

*In re American Investors*,
    2006 WL 1531152 (E.D.Pa. June 2, 2006)........................................19

*In re Knapper*,
    407 F.3d 573 (3d Cir. 2005)................................................................8

*In re Madera*,
    586 F.3d 228 (3d Cir. 2009)................................................................8

*Learning Works, Inc. v. Learning Annex, Inc.*,
    830 F.2d 541 (4th Cir. 1987)............................................................16

*Marangos v. Swett*,
    No. 07-5937, 2008 WL 4508542 (D.N.J. Sept. 29, 2008)..................19

*Opdycke v. Stout*,
    233 Fed. Appx. 125 (3d Cir. 2007)....................................................8

*Park v. M&T Bank Corp.*,
    No. 09-2921, 2010 U.S. Dist. LEXIS 24905......................................15

*Patetta v. Wells Fargo Bank, N.A.*,
    No. 09-2848, 2010 U.S. Dist. LEXIS 47233 (D.N.J May 13, 2010)..................9, 11

*Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994)...........................................2

*Premier Pork, LLC v. Westin, Inc.*,
    2008 U.S. Dist. LEXIS 20532 (D.N.J. Mar. 17, 2008).........................................................16

**STATE CASES**

*Banco Popular v. Gandhi*,
    184 N.J. 161 (2005) ......................................................................................................17, 18

*Kantor v. Franceschello*,
    82 N.J. Eq. 182,183 (Ch. Div. 1913) ..................................................................................14

*Laytham v. Mann*,
    120 N.J. Eq. 563 (Ch. Div. 1936) .......................................................................................15

*Morgan v. Union County Bd. of Chosen Freeholders*,
    268 N.J. Super. 337 (App. Div. 1993) .................................................................................17

*Petrullo v. Bachenberg, et al.*,
    139 N.J. 472 (1995) ............................................................................................................18

*State v. Ball*,
    661 A.2d 251 (NJ 1995)......................................................................................................19

*Township of Warren v. Suffness*,
    225 N.J. Super. 399 (App. Div. 1988) ..................................................................................9

*Trautwein v. Bozzo*,
    35 N.J. Super. 270 (Ch. Div. 1955), aff'd, 39 N.J. Super. 267 (App. Div. 1956) .................15

*Wiley v. Wirbelauer*,
    116 N.J. Eq. 391 (Ch. Div. 1936) .......................................................................................15

**STATUTES**

15 U.S.C. §1601 et seq...............................................................................................................13

15 U.S.C. §1635 et seq...............................................................................................................13

N.J.S.A. 2C:41-1(d) ...................................................................................................................19

N.J.S.A. 46:10B-22 et seq..........................................................................................................13

**OTHER AUTHORITIES**

Fed. R. Evid. 201(b)....................................................................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1, 6, 7

Federal Rule of Civil Procedure Rule 9(b) ...................................................................16

DMEAST #14149106 v2

Defendants Ballard Spahr LLP and Mariah Murphy (the "Law Firm Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I.   INTRODUCTION

Plaintiff's filing of this Amended Complaint marks the fourth different Court to which he has asserted the same claims relating to a simple foreclosure matter that has now morphed into frivolous and wholly meritless claims, and nonsensical, irrelevant and fanciful allegations against the law firm who represented the lender in the foreclosure proceedings. Plaintiff's claims have already been litigated and rejected in the state court and they cannot be relitigated here.

In 2004, Peter D. DiPietro ("DiPietro" or "Plaintiff") purchased vacant land located at Lot 21, Block 7002, S. Blue Bell Road, Franklin Township, New Jersey (the "Property"). DiPietro applied for and borrowed funds from Newfield National Bank ("Newfield") for the purchase of the vacant land and the construction of a residence. DiPietro received the funds, completed construction and later defaulted on his monthly mortgage payments. As a result of DiPietro's payment default, Newfield instituted foreclosure proceedings and the Honorable James E. Rafferty, New Jersey Superior Court, Chancery Division, Gloucester County, granted summary judgment in favor of Newfield on the foreclosure

---

[1]  In this action, Plaintiff filed a Complaint on September 6, 2011. On September 23, 2011, Plaintiff sought leave to file an Amended Complaint. The Court granted Plaintiff's Motion for Leave and the Amended Complaint was entered on the docket on or about October 25, 2011. The Law Firm Defendants filed a Motion to Dismiss the Complaint on October 18, 2011. The Complaint and Amended Complaint are in all respects identical with respect to the Law Firm Defendants. On December 9, 2011, the Court dismissed as moot the Law Firm Defendants' Motion to Dismiss on the basis that it related to the initial Complaint. Therefore, the Law Firm Defendants submit this Motion to Dismiss the Amended Complaint.

complaint in September of 2010.[2]  Judge Rafferty then severed and transferred DiPietro's

counterclaims, which DiPietro filed in the foreclosure action, to the New Jersey Superior Court,

Law Division, Gloucester County.  DiPietro then sought to amend his complaint and requested

the docket be transferred to the New Jersey Superior Court, Law Division, Cumberland County.

After extensive and needless motion practice by DiPietro, he eventually amended the complaint

and the case was assigned to the Honorable Richard Geiger, New Jersey Law Division

Cumberland County.

       In DiPietro's Amended Complaint, in the state court action, he sought damages

from Ballard Spahr LLP and Mariah Murphy[3] who represented Newfield in the foreclosure

proceedings against DiPietro.  DiPietro's claims in that action against the Law Firm Defendants,

like here, were for fraud, conspiracy, breach of a duty of care and racketeering, among others.

After DiPietro and the Law Firm Defendants filed motions for summary judgment, Judge Geiger

considered DiPietro's claims and ultimately found them meritless.  Judge Geiger then granted

summary judgment in favor of the Law Firm Defendants in September of 2011.[4]

       After unsuccessful forays into the Appellate Division, the Chancery Division and

the Law Division in two separate counties, DiPietro now turns to the federal courts in an attempt

---

[2]    DiPietro appealed this decision to the New Jersey Appellate Division.  On November 9,
       2011, the Appellate Division dismissed his appeal.  *See Exhibit D* (Order).  The
       Certification of Counsel in Support of this Motion and the exhibits thereto are
       incorporated by reference.

[3]    Mariah Murphy is an Associate of Ballard Spahr LLP.

[4]    The Order submitted with this Motion is a public record filed in the state court.  *See*, Fed.
       R. Evid. 201(b).  This Court can rely upon and look to this public reocrd within the
       context of a motion to dismiss.  *See, e.g., Pension Benefit Guaranty Corp. v. White
       Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S.
       1042 (1994).

to reassert baseless claims which have already been decided and rejected in the state courts.

DiPietro comes before this Court alleging the same facts and pleading the same legal theories

that were already rejected by the state court.  Having been litigated in the state proceedings,

DiPietro's claims are barred by the Rooker Feldman doctrine and should be dismissed with

prejudice.  Moreover, even if this Court held that the Rooker Feldman doctrine did not serve as a

bar to DiPietro's claims, both res judicata and the entire controversy doctrine each preclude

DiPietro's claims.

DiPietro's fraud, conspiracy, breach of a duty of care and racketeering claims fail

for additional reasons.  As an initial matter, DiPietro's claims here are predicated on his belief

that the Law Firm Defendants somehow conspired with Newfield to hide certain documents.

However, all relevant documents were provided to DiPietro during the discovery period in the

foreclosure case.  Moreover, the document DiPietro specifically complains about, the Uniform

Residential Loan Application, was provided in Newfield's document production.  Further, the

document has been in DiPietro's possession since at least November 2009, when he attached it to

a motion he filed in the Chancery Court.  Plainly, DiPietro's argument here is a complete red

herring that fails to support any claim, let alone the claims pled here against the Law Firm

Defendants.  Additionally, DiPietro argues that the Law Firm Defendants conspired with

Newfield to violate federal and state laws regarding the issuance of his loan.  Putting aside for a

moment that such alleged violations are completely meritless against any party, the Law Firm

Defendants did not even represent Newfield during the issuance of the loan.  As such, it is

beyond ridiculous for DiPietro to bring claims against the Law Firm Defendants in connection

with any perceived wrongs that occurred when his loan was executed, since the Law Firm

Defendants had no involvement at all in the Plaintiff's underlying loan transaction.

Furthermore, DiPietro fails to establish his claims for fraud, conspiracy, breach of a duty of care and racketeering as a matter of law and this Court should dismiss them with prejudice.  DiPietro's fraud claim fails to specify the alleged misrepresentations that supposedly make the Law Firm Defendants liable for fraud.  Likewise, DiPietro's claim for conspiracy against the Law Firm Defendants simply fails to state a cognizable cause of action for which relief could be granted.  Moreover, DiPietro fails to plead how the Law Firm Defendants breached any duty it allegedly owed to him.  As such, DiPietro's claim for a breach of a duty of care simply fails.  Finally, DiPietro's racketeering claim against the Law Firm Defendants fails to state a coherent cause of action for which relief could be granted.

For all of these reasons, DiPietro's Amended Complaint against the Law Firm Defendants should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

In 2004, DiPietro purchased the Property at issue and applied for and borrowed funds from Newfield for that purchase of the vacant land and for the construction of a residence. *See Exhibit A* at pp. 4-5 (Law Firm Defendants' Cross-Motion for Summary Judgment). The original principal amount of the loan was $200,000.00, of which $49,329.00 was utilized to purchase the land, and the remainder would be issued in construction draws for the construction of a residence. *See Exhibit A* at pg. 5.

In 2007, DiPietro applied for and borrowed additional funds from Newfield to complete the construction of the residence. *Id.*  The original principal amount of the loan was increased to $240,000.00. *Id.*  Thereafter, once construction was completed and a certificate of occupancy was issued, DiPietro closed on the permanent loan in August 2007. *Id.*  In August 2007, DiPietro executed a Note and Mortgage and a Rider to the Mortgage, all of which state the term of the loan for a five year period at a fixed rate of interest.  Beginning in September 2008,

approximately one year after the loan closed, DiPietro defaulted by failing to make payments on the loan. *Id.*

As a result of DiPietro's payment default, Newfield filed a foreclosure complaint on December 11, 2008. *Id.* Throughout the foreclosure proceedings, DiPietro and Newfield exchanged written discovery. *Id.* Within the discovery period, DiPietro filed numerous frivolous motions, including a motion seeking recusal, at least three motions for leave to file amended counterclaims and at least three discovery motions alleging Newfield's discovery responses were incomplete and/or improper. *See Exhibit A* at pp. 5-6. All of DiPietro's motions were denied by the Chancery Court. *See Exhibit A* at pg. 6.

Both parties filed motions for summary judgment which were heard on September 16, 2010 by the Honorable James E. Rafferty in the Chancery Division, Gloucester County. *Id.* On September 16, 2010, the court issued an Order granting summary judgment in favor of Newfield on the Foreclosure Complaint and denied DiPietro's motion for summary judgment. *Id.* On September 17, 2010, the court issued an Order which severed DiPietro's Counterclaim from the foreclosure action and transferred the Counterclaim to the Law Division. *Id.*

On March 30, 2011, the Law Firm Defendants filed an Answer to DiPietro's Amended Complaint. *See Exhibit A* at pg. 7. DiPietro's Amended Complaint against the Law Firm Defendants, like here, were for claims of fraud, conspiracy, breach of a duty of care and racketeering, among others. *See Exhibit A* at pg. 4. After DiPietro and the Law Firm Defendants filed motions for summary judgment, Judge Geiger carefully considered all of DiPietro's claims

and ultimately found them meritless. *See Exhibit B* (Order). Judge Geiger then granted

summary judgment in favor of the Law Firm Defendants in September of 2011.[5] *Id.*

   Unsatisfied with the rulings in the state courts, DiPietro now improperly attempts

to bring the same claims against the Law Firm Defendants before this Court. *See Exhibit C*

(DiPietro's federal Amended Complaint). For the reasons set forth below, DiPietro's Amended

Complaint against the Law Firm Defendants should be dismissed with prejudice.

## III.   LEGAL ARGUMENT

### A.   Standard of Review

   Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint

that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court set forth its most specific

pronouncement to date on the standards a complaint must meet in order to survive a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). There, the Court reiterated the

holding of its prior decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that a

pleading which offers "labels and conclusions" or a "formulaic recitation of the elements of a

cause of action" "will not do." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Nor

does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557). Expanding on these principles, the *Iqbal*

Court explained that, to survive dismissal, a complaint must contain "sufficient factual matter,

accepted as true, to state a claim to relief that is **plausible on its face**." *Id.* (emphasis added).

The Court explained:

---

[5]  DiPietro's remedy for any dissatisfaction with Judge Geiger's ruling is to file an appeal to
New Jersey's Appellate Division, not to file an Amended Complaint in the United States
District Court.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.*  Thus, the Court concluded, a district court's role when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 1950.

In short, under *Ashcroft* and *Twombly,* a complaint must contain direct and plausible allegations respecting all material elements necessary to sustain recovery under a viable legal theory in order to survive a motion to dismiss under Rule 12(b)(6).  A complaint should be dismissed when, on its face, it is devoid of the facts necessary for the plaintiff to prevail under the causes of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

Applying these standards to DiPietro's claims results in a dismissal, since DiPietro fails to state a claim upon which relief could be granted.  Taking the factual allegations in the Amended Complaint as true, DiPietro fails to state claims against the Law Firm Defendants for fraud, conspiracy, breach of a duty of care and racketeering.  Having previously litigated his claims in state court and lost, DiPietro's claims are barred by the Rooker Feldman doctrine and by New Jersey's preclusionary doctrines of res judicata and entire controversy.

**B.     The Rooker Feldman Doctrine Bars DiPietro's Claims**

Pursuant to the Rooker Feldman doctrine, federal courts lack jurisdiction to review state court judgments. *See In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). A "federal claim is barred by Rooker Feldman under two circumstances; first if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state court adjudication, meaning that the federal court relief can only be predicated upon a conviction that the state court was wrong." *Id.* at 580. A claim is "inextricably intertwined with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009).

The Rooker Feldman doctrine bars "cases brought by state court losers complaining of injuries caused by a state court judgment rendered before the district court proceedings commenced and inviting the district court review and rejection of those judgments." *See Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Givens v. Homecomings*, 278 Fed. Appx. 607 (6th Cir. 2008). Here, the Rooker Feldman doctrine requires this Court to abstain from upsetting the Superior Court's lawful Order granting Summary Judgment for the Law Firm Defendants as to DiPietro's claims for fraud, conspiracy, breach of a duty of care and racketeering.

There simply can be no question that Rooker Feldman precludes a review and or reversal of the judgment here. For this reason alone, this Court should dismiss DiPietro's Amended Complaint. *See, Opdycke v. Stout*, 233 Fed. Appx. 125, 131 n. 10 (3d Cir. 2007) (dismissal is appropriate where the Rooker Feldman doctrine bars the relief in federal court and plaintiffs' claims could not proceed in state court).

**C.      New Jersey's Preclusionary Doctrines; Res Judicata and Entire Controversy Preclude DiPietro's Claims**

Even if this Court were to hold that the Rooker Feldman doctrine did not bar DiPietro's claims, the claims are alternatively barred by: (i) res judicata and (ii) the entire controversy doctrine.  "[T]he continuing vitality of a federal action filed after entry of a state-court judgment often depends on state preclusion law."  *Patetta v. Wells Fargo Bank, N.A.*, No. 09-2848, 2010 U.S. Dist. LEXIS 47233 at *32 (D.N.J May 13, 2010).  "[T]he full faith and credit act requires federal courts to give the same preclusive effect to a state court judgment" as the state court would give.  *Patetta*, 2010 U.S. Dist. LEXIS 47233 at *32.  Accordingly, New Jersey law and its preclusionary doctrines apply here and bar DiPietro's claims.

**1.      Res Judicata Bars DiPietro's Claims Since They Were Already Litigated In State Court**

Even if this Court did not find that DiPietro's claims are barred by the Rooker Feldman doctrine, his claims are barred by res judicata, since the same precise claims brought here against the Law Firm Defendants were already adjudicated in the state court.

Res judicata, also known as claim preclusion, bars a party from relitigating a second time what was litigated and finally determined the first time.  *See, e.g., Township of Warren v. Suffnes*s, 225 N.J. Super. 399, 408 (App. Div. 1988).  Under New Jersey law, res judicata requires the following elements: (1) the final judgment in the prior action must be valid, final and on the merits, (2) the parties in the later action must be identical to or in privity with the prior action; and (3) the claim in the later action must grow out of the same transaction."  *Harris v. Brody*, 317 Fed. Appx. 153, 155 (3d Cir. 2008).  Where these elements are present, a final judgment on the merits of an action precludes the parties or their privies from relitigating the issues that were raised or could have been raised in the previous action.  *See, e.g., Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394 (1981).

Here, there can be no question that the claims for fraud, conspiracy, breach of a duty of care and racketeering brought in this action were in fact litigated in the state court action, and the state court judgment was valid, final and on the merits. The exact causes of action pled here, fraud, conspiracy, breach of a duty of care and racketeering were also pled in the state court action. *See Exhibit A*. Judge Geiger carefully considered DiPietro's claims and ultimately granted summary judgment in favor of the Law Firm Defendants in September of 2011.

DiPietro had a full and fair opportunity to litigate his claims against the Law Firm Defendants in the state court action and he lost. Thus, the claims for fraud, conspiracy, breach of a duty of care and racketeering against the Law Firm Defendants were fully and finally litigated in the state court action.

With respect to the second res judicata element, the parties in the state court action and this federal action against the Law Firm Defendants are identical. The Plaintiff in the state court action concerning the Amended Complaint was DiPietro and he is the Plaintiff here as well. The Law Firm Defendants, Ballard Spahr LLP and Mariah Murphy, are the Defendants both in the state court action and here as well.

Lastly, the claims in this action arise from the state court action concerning the original loan transaction between DiPietro and Newfield.

As such, the elements of res judicata are satisfied, since the final judgment in the state court action was valid, final and on the merits; the parties in this action are identical to or in privity with the state court action; and the claims in this action grow out of the original loan transaction. Thus, res judicata precludes DiPietro from relitigating his claims for fraud, conspiracy, breach of a duty of care and racketeering against the Law Firm Defendants and his Amended Complaint should be dismissed with prejudice.

2.    **The Entire Controversy Doctrine Precludes DiPietro's Claims Since They Were Litigated In State Court**

DiPietro's claims are also barred by the entire controversy doctrine. New Jersey's entire controversy doctrine "is a preclusionary device intended to prevent fractionalized litigation by requiring the assertion of all claims arising from a single controversy in one action." *Patetta*, 2010 U.S. Dist. LEXIS 47233 at *35 (further citations omitted). In determining whether the doctrine applies, "the central consideration is whether the claims … arise from related facts or the same transaction or series of transactions." *Id.* at 35.

The claims for fraud, conspiracy, breach of a duty of care and racketeering against the Law Firm Defendants brought by DiPietro here, not only <u>could have been brought</u> in the state court action, they <u>were brought</u> in the state court action. As discussed above, Judge Geiger carefully considered DiPietro's claims and ultimately granted summary judgment in favor of the Law Firm Defendants in September of 2011. Thus, DiPietro's efforts to relitigate his claims regarding the original loan transaction under the guise of the claims asserted here are barred by the entire controversy doctrine.

D.    **DiPietro Has Failed To Plead Any Facts Supporting His Assertion That The Law Firm Defendants Conspired With Newfield To Hide Certain Documents Or Conspired With Newfield To Violate Various Federal And State Laws Regarding The Issuance Of His Loan**

DiPietro alleges that the Law Firm Defendants conspired with Newfield to hide certain documents from him. *See* Amended Compl., Count XV ¶ 4, Count XVII ¶ 3, and Count XIX ¶ 3. As an initial matter, all relevant documents were provided to DiPietro during the discovery period in the foreclosure case. Moreover, the document DiPietro specifically complains about, the Uniform Residential Loan Application, was provided in Newfield's document production. Further, the document has been in DiPietro's possession since at least November 2009, when he attached it to a motion he filed in the Chancery Court. Plainly,

DiPietro's argument here is a complete red herring that attempts to obfuscate the issues of this case.

The fundamental basis for all of DiPietro's claims involving this case center on his belief that he was victimized because he applied for one type of loan, a thirty year loan, and he received a different loan, a five year loan. However, at closing, DiPietro executed no less than five documents, the Note, Mortgage, Rider, Good Faith Estimate and TILA Disclosure Statement, each of which provide that the term of the loan was five years. DiPietro cannot contradict the terms of the executed documents by stating he applied for and/or believed the term of the loan was for thirty years. The clear evidence demonstrated the term of the loan was for five years, and DiPietro's belief that it was something else, and/or that he applied for something else, does not support his tenuous claims. Moreover, DiPietro's fanciful assertions that his Uniform Residential Loan Application was concealed by Newfield or the Law Firm Defendants is beyond absurd.

Specifically, DiPietro alleges in his Amended Complaint that "Defendant Ballard Spahr LLP did attempt to conceal their client's copy of the URLA for a thirty year fixed rate during the action" and that "Defendant Mariah Murphy attempted to conceal the thirty year fixed rate URLA from plaintiff to defraud him of his property." *See* Amended Compl., Count XV ¶ 4, Count XVII ¶ 3, and Count XIX ¶ 3. As discussed above, this is simply untrue. The Law Firm Defendants produced all relevant documents to DiPietro during the discovery period in the foreclosure case. Moreover, the document DiPietro specifically complains about, the Uniform Residential Loan Application, was provided in Newfield's document production and was in his possession since November 2009. Accordingly, there is simply no plausible evidence here that the Law Firm Defendants conspired with Newfield to hide documents from DiPietro.

DMEAST #14149106 v2

12

Moreover, DiPietro also argues that the Law Firm Defendants conspired with Newfield to violate a myriad of federal and state laws regarding the issuance of his loan.  *See* Amended Compl., Count XVII ¶¶ 6-9, Count XVIII ¶ 2, Count XIX ¶ 2, and Count XX ¶ 2. Putting aside for a moment that such alleged violations are completely meritless against any party, the Law Firm Defendants did not even represent Newfield during the issuance of the loan. Thus, it is beyond ridiculous for DiPietro to bring claims against the Law Firm Defendants in connection with any perceived wrongs that occurred when his loan was executed.

Specifically, DiPietro alleges in his Amended Complaint that "Defendant Murphy acted individually to willfully conspire with Newfield National Bank's wrongful conduct which have violated Federal and State laws, specifically Title 12 § 2603(b), Truth In Lending Act ('TILA'), 82 Stat. 146, Title 15 U.S.C. §1601 et seq., Title 15 U.S.C. §1635 et seq., 1635(f), 'RESPA' regulations, 'REGULATION Z' regulations, Home Ownership and Equity Protection Act ('HOEPA'), and HUD-1 violations, and New Jersey Home Ownership Security Act, N.J.S.A. 46:10B-22 et seq. and Amendments, by and through Predatory Lending Practices perpetrated by Newfield National Bank defendant Mariah Murphy did secure a foreclosure on the plaintiff property" and that "Defendant Mariah Murphy acted individually and conspired with her client Newfield National Bank to secure a foreclosure and unlawfully take the plaintiff's property with full knowledge that plaintiff was a victim of predatory lending, bait and switch scheme was not disclosed about the loan prior to, during and after closing, thereby violating Federal and State Laws and Statutes."  *See* Compl., Count XVII ¶ 9 and Count XVIII ¶ 2.

Plainly, these preposterous allegations center on DiPietro's belief that he was somehow wronged during the period of time surrounding the issuance of his loan.  However, the Law Firm Defendants were not even retained by Newfield until approximately February 2009, a

year and a half after his loan closed, and a couple of months after the foreclosure proceedings began. As such, the Law Firm Defendants initial involvement here occurred more than one and a half years after DiPietro's loan closed with Newfield. Since the Law Firm Defendants had **no** involvement with the loan transaction that DiPietro unintelligibly claims wronged him, it is plain that the Law Firm Defendants could not have conspired with Newfield to wrong DiPietro in connection with his loan. Accordingly, it is completely disingenuous and wholly meritless for DiPietro to bring claims against the Law Firm Defendants in connection with any perceived wrongs that occurred regarding his loan transaction. As such, there are no facts pled supporting DiPietro's contention that the Law Firm Defendants conspired with Newfield to violate a myriad of federal and state laws regarding the issuance of his loan.[6]

### E.     DiPietro Has Failed To Sufficiently Plead Any Facts Supporting A Claim Of Fraud Against The Law Firm Defendants

DiPietro's baseless claim for fraud seems to center on his assertions that: (1) the Law Firm Defendants in some way conspired with Newfield to hide certain documents; (2) the Law Firm Defendants by some means conspired with Newfield to violate a myriad of federal and state laws regarding the issuance of his loan; and (3) the Law Firm Defendants somehow fraudulently secured a foreclosure against DiPietro. Simply put, these unavailing assertions are wholly without merit.

The burden of proving fraud is solely that of the party alleging fraud. *Kantor v. Franceschello*, 82 N.J. Eq. 182,183 (Ch. Div. 1913) (holding that the "burden of proof as to the…'fraudulent representations' is upon the party alleging fraud"). DiPietro's proof of alleged

---

[6]     Moreover, the federal and state statutes pled by DiPietro do not even apply to the Law Firm Defendants. Even if they did, Judge Geiger has already dismissed DiPietro's claims for alleged violations of the TILA, RESPA, HOSA and HOEPA against Newfield, and they cannot form the basis of any claim against the Law Firm Defendants.

fraud must be established by clear and convincing evidence.  *Trautwein v. Bozzo*, 35 N.J. Super. 270, 277 (Ch. Div. 1955), aff'd, 39 N.J. Super. 267 (App. Div. 1956); *Laytham v. Mann*, 120 N.J. Eq. 563, 566 (Ch. Div. 1936); *Wiley v. Wirbelauer*, 116 N.J. Eq. 391, 396 (Ch. Div. 1936). A fraud claim requires a showing of: a material misrepresentation of a presently existing or past fact, knowledge or belief of its falsity, an intent that the defendant relied upon it, reasonable reliance by the defendant; and resulting damages to the defendant.  *See Park v. M&T Bank Corp.*, No. 09-2921, 2010 U.S. Dist. LEXIS 24905 at *16-17 (further citations omitted).

DiPietro has failed to plead ***any*** evidence of fraud by the Law Firm Defendants. Instead, he simply casts incoherent aspersions against the Law Firm Defendants in an attempt to conjure up a fraud claim.  This Court should simply not entertain these inarticulate rantings that the Law Firm Defendants somehow committed fraud by allegedly hiding documents, by conspiring with their client or by fraudulently securing a foreclosure against DiPietro.  To call these allegations threadbare is being generous – they, in fact, are simply vacuous musings of a man whose sole mission in life appears to be to sue and defame everyone he comes in contact with, including the state court who adjudicated his claims.  Accordingly, DiPietro has failed to sufficiently plead fraud against the Law Firm Defendants.

Moreover, even if DiPietro could somehow successfully assert wrongful conduct or fraud against the Law Firm Defendants, which he clearly cannot, he fails to state any ascertainable loss or damage as a result of the alleged fraud.  Rather, he simply asks this Court for $3,200,000.00 in damages from the Law Firm Defendants in conjunction with his fraud claim without stating what his particular damages are.

Further, even assuming that DiPietro has sufficiently alleged an actionable misrepresentation made with knowledge of its falsity and intent to deceive, which he did not, he

utterly fails to plead justifiable reliance. "Rule 9(b) … requires that the detrimental reliance element of a fraud claim be pleaded with particularity." *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990). In *Premier Pork, LLC v. Westin, Inc.*, 2008 U.S. Dist. LEXIS 20532 (D.N.J. Mar. 17, 2008), for example, the court dismissed a fraud claim where the plaintiff alleged only that it "reasonably and justifiably relied on the intentional misrepresentations" of the defendant. *Id.* at *35. The court reasoned that this allegation was "precisely the kind of generalized pleading Rule 9(b) prohibits" because it was conclusory and "did not show how plaintiff acted on the alleged fraud." *Id. See also Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987) (affirming dismissal of fraud claim where plaintiff alleged it detrimentally relied on defendant's misrepresentation by ceasing operations, but failed to allege detailed factual allegations supporting a conclusion that this reliance was reasonable).

In this case, DiPietro makes no effort to specify how he changed his position or otherwise relied to his detriment on any representation allegedly made by the Law Firm Defendants. He does not, for example, allege that he incurred any additional costs, above and beyond what he otherwise would have incurred, as a result of the alleged actions of the Law Firm Defendants. Thus, just as in *Premier Pork*, DiPietro here asserts "the kind of generalized pleading Rule 9(b) prohibits."

As a result, DiPietro's fraud claim is invalid on its face and should be dismissed with prejudice.

**F.** **DiPietro Has Failed To Sufficiently Plead Any Facts Supporting A Claim Of Civil Conspiracy Against The Law Firm Defendants**

Notwithstanding the deficiency of DiPietro's Amended Complaint generally, his civil conspiracy claim against the Law Firm Defendants fails to state a cognizable cause of action for which relief could be granted. DiPietro's allegation here is completely devoid of any

facts which purport to explain how a conspiracy occurred.  Moreover, DiPietro fails to identify

any specific conduct by the Law Firm Defendants that he alleges amounts to a conspiracy.  As a

result, his wholly conclusory conspiracy charge is clearly insufficient to support a claim and the

Law Firm Defendants are entitled to a dismissal with prejudice.

Under New Jersey law "[a] civil conspiracy is 'a combination of two or more

persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful

means, the principal element of which is an agreement between the parties to inflict a wrong

against or injury upon another and an overt act that results in damages.'"  *Morgan v. Union*

*County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993); *see also Banco*

*Popular v. Gandhi*, 184 N.J. 161 (2005).

DiPietro fails to allege the elements of a civil conspiracy claim, specifically that

the Law Firm Defendants committed either an unlawful act or a lawful act in an unlawful way, or

that the Law Firm Defendants entered into an agreement to engage in a fraudulent scheme.  The

Law Firm Defendants merely represented Newfield in the litigation surrounding the foreclosure

of the Property and the subsequent litigation that has ensued.  There is simply no factual support

in the Amended Complaint that sustains an allegation that the Law Firm Defendants entered into

a conspiracy to somehow harm DiPietro.  Thus, there is no alleged activity that bears any

resemblance to an alleged civil conspiracy.  In short, DiPietro fails to establish that the Law Firm

Defendants engaged in a civil conspiracy and the Law Firm Defendants are entitled to a

dismissal with prejudice on this claim.

Additionally, DiPietro fails to specifically allege any resulting harm as a result of

the Law Firm Defendants' purported conspiracy.  Instead, he simply asks the Court for

$3,200,000.00 in damages without any specificity.  In sum, the Law Firm Defendants did not

injure DiPietro and he suffered no damages from the Law Firm Defendants.  As such, DiPietro's

civil conspiracy claim fails to state a cause of action against the Law Firm Defendants and the

claim should be dismissed with prejudice.

### G.    DiPietro Has Failed To Sufficiently Plead Any Facts Supporting A Claim For Breach Of A Duty Of Care Against The Law Firm Defendants

DiPietro pleads no facts in support of his breach of a duty of care claim for the

simple reason that none exist.  Even if they did exist, he does not and cannot support a breach of

a duty claim against the Law Firm Defendants, since the Law Firm Defendants owe him no tort

duty of care.[7]

DiPietro seemingly contends that the Law Firm Defendants had a duty not to

harm him arising out of their relationship as adversaries.  However, there is no presumed

fiduciary relationship between an attorney and his adversary.  Moreover, the cases holding an

attorney liable to a third party have done so only where the attorney was actually involved in the

underlying transaction at issue.  *Petrullo v. Bachenberg, et al.*, 139 N.J. 472 (1995) (addressing

whether a law firm could be held liable for turning over portions of a soil report in connection

with the sale of real estate); *Banco Popular v. Gandi, et al.*, 184 N.J. 161 (2005) (addressing

whether a law firm could be held liable for the issuance and content of an opinion letter drafted

by the law firm and issued in connection with an underlying loan transaction).  There exists no

statute or case law holding a law firm liable for an alleged loan or real estate transaction in which

it had no involvement whatsoever.

Moreover, DiPietro has failed to establish that the Law Firm Defendants breached

any duty it allegedly owed to him.  Thus, DiPietro's sole basis for a breach of a duty of care fails

---

[7]    In addition, as set forth above, Plaintiff has suffered no damages.

as a matter of law, and the Law Firm Defendants are entitled to dismissal with prejudice on this claim.

**H.      DiPietro Has Failed To Sufficiently Plead Any Facts Supporting A Claim Of Racketeering Against The Law Firm Defendants**

DiPietro's racketeering claim against the Law Firm Defendants fails to state a coherent cause of action for which relief could be granted.  Further, his allegation here is utterly devoid of any facts which attempt to explain how racketeering transpired in this case.  Moreover, DiPietro fails to identify any specific conduct by the Law Firm Defendants that he alleges amounts to a racketeering claim.  As a result, his naked racketeering allegation is plainly inadequate to support a claim and the Law Firm Defendants are entitled to a dismissal with prejudice on this claim.

Under New Jersey law, racketeering is prohibited under New Jersey's Racketeer Influenced and Corrupt Organizations Act ("NJ RICO").  In order to support a NJ RICO claim, DiPietro must prove not only the existence of a RICO "enterprise" but also a "pattern of racketeering activity."  *State v. Ball*, 661 A.2d 251, 261 (NJ 1995); *see also Marangos v. Swett*, No. 07-5937, 2008 WL 4508542, at *8 (D.N.J. Sept. 29, 2008); *In re American Investors*, 2006 WL 1531152 at *10 (E.D.Pa. June 2, 2006).  Accordingly, DiPietro must establish his allegations of racketeering activity with specificity.  Plainly, DiPietro has not and cannot do so.

DiPietro's Amended Complaint contains a string of "naked assertion[s]" devoid of "further factual enhancement," which fail to constitute even a "formulaic recitation of the elements of a cause of action."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 557).  Simply put, DiPietro fails to offer even the most threadbare factual support for a racketeering claim.  Accordingly, DiPietro fails to establish any racketeering activity and his racketeering

claim is simply meritless.  As a result, the Law Firm Defendants are entitled to a dismissal with prejudice on this claim.

Moreover, even if DiPietro had adequately alleged the predicate criminal racketeering activity, he must also establish that such activity occurred in a pattern.  *See* 2C:41-1, 2; *Ball*, 661 A.2d at 261.  At a minimum, NJ RICO requires at least "two incidents of racketeering conduct."  N.J.S.A. 2C:41-1(d).  DiPietro fails to adequately establish even this most basic statutory requirement.  First, as noted above, DiPietro fails to allege any racketeering activity at all, let alone a pattern of such activity.  Second, even if DiPietro has adequately alleged one such act against him, the Amended Complaint contains no factual allegations regarding additional acts.  Such an allegation, made without any supporting facts, is plainly insufficient, and DiPietro has accordingly failed to establish a pattern of racketeering activity.  As such, DiPietro has failed to establish any pattern of racketeering activity and his racketeering claim is simply baseless.  Accordingly, the Law Firm Defendants are entitled to a dismissal with prejudice on this claim.

## IV.    CONCLUSION

For the reasons set forth above, the Law Firm Defendants respectfully request that this Court enter an Order dismissing DiPietro's Amended Complaint with prejudice for failure to state a claim upon which relief can be granted.

Dated:  December 9, 2011

_____
Dean C. Waldt
Mariah Murphy
Christopher Corsi
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey  08002-1163

Attorneys for Defendants Ballard Spahr LLP and
Mariah Murphy