```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

|   |   |
|---|---|
| PETER DIPIETRO, : | |
| : | Civ. A. No. 11-5110 (NLH)(AMD) |
| Plaintiff, : | |
| : | |
| v. : | |
| : | **OPINION** |
| LANDIS TITLE COMPANY, et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

PETER DIPIETRO
495 SOUTH BLUEBELL ROAD
VINELAND, NJ 08360

    Appearing *pro se*

PHILLIP S. VAN EMBDEN
PHILLIP S. VAN EMBDEN, P.C.
P.O. BOX 863
900 EAST PINE STREET
MILLVILLE, NJ 08332

    On behalf defendants Renee Gould and Landis Title
    Corporation[1]

CHRISTOPHER CORSI
BALLARD SPAHR LLP
210 LAKE DRIVE EAST
SUITE 200
CHERRY HILL, NJ 08002

    On behalf of defendants Ballard Spahr, LLP and Mariah Murphy

KELLY AMBER SAMUELS
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL

---

[1]    These defendants' names are incorrectly pleaded as "Renie Geuld" and "Landis Title Company."

```
DIVISION OF LAW
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625
```

    On behalf of defendants Superior Court of New Jersey, Judge Anne McDonnell, Dan Long, and Martina Hinman

**HILLMAN, District Judge**

This case concerns plaintiff's claims that defendants violated numerous constitutional, statutory, and common law rights during their involvement in a state court foreclosure action. Currently pending before this Court are the motions of defendants to dismiss plaintiff's case, as well as motions by plaintiff for an injunction and for leave to file a second amended complaint.[2] For the reasons expressed below, defendants' motions will be granted, and plaintiff's motions will be denied.

---

[2] Also pending is the motion of several other New Jersey state court judges who have been involved in DiPietro's state court cases, and who have appeared as "objectors" in this case. Since the filing of the motions listed above, DiPietro has filed voluminous documents on the docket in an effort to charge criminally and impeach these judges. The documents are titled "Verified Criminal Complaint on Information," "Notice and Demand to Convey Verified Criminal Complaint, on Information to Lawfully Convene Federal Grand Jury," "Notice and Demand to Appear before a Competent and Qualified Federal Grand Jury," and "Application/Petition for Bill of Impeachment against NJ Superior Court Judges." (See Docket Numbers 46, 47, 48, 49.) The "objectors" have moved to dismiss or strike these filings. Because DiPietro has no ability to obtain such relief here, the Court will not consider his requests. Moreover, because the Court views these documents to contain "immaterial, impertinent [and] scandalous matter," the Court will strike them. See Fed. R. Civ. P. 12(f). Accordingly, the objectors' motion to strike will be granted.

2

**BACKGROUND**

In August 2007, plaintiff, Peter D. DiPietro, executed a fixed-rate five-year note and a first mortgage to Newfield National Bank, which secured his repayment of $240,000 plus interest within the term of the note.  DiPietro defaulted in September 2008, and Newfield filed a complaint in New Jersey state court, Gloucester County, seeking foreclosure and possession.  DiPietro filed an answer to the foreclosure complaint, and asserted four counterclaims seeking, among other things, damages for fraud.

On September 16, 2010, the chancery court judge assigned to the matter heard argument on the parties' cross-motions for summary judgment.  Although DiPietro acknowledged signing the five-year note and mortgage and his failure to make the monthly payments required since 2008, he sought judgment primarily on the ground that he had applied for a thirty-year mortgage.  After hearing argument, the judge granted summary judgment on the foreclosure to Newfield National Bank, but concluded that DiPietro's counterclaims could not be addressed on summary judgment and should be transferred to the Law Division.  See Newfield Nat. Bank v. DiPietro, 2011 WL 5374967, *1 (N.J. Super. Ct. App. Div. 2011).[3]

---

[3]   The Court takes judicial notice of DiPietro's state court case.  McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009)

Once his case was in the Law Division, DiPietro added as defendants Landis Title Corporation, and Landis Title employee Renee Gould. Landis Title had been engaged by Newfield National Bank to act as the title company in the August 2007 closing, and Gould prepared the HUD-1 Settlement Statement. DiPietro also added as defendants the law firm Ballard Spahr, LLP and associate attorney Mariah Murphy. Ballard Spahr and Murphy represented Newfield National Bank in the foreclosure proceedings. DiPietro's case was assigned to Judge Anne McDonnell, whose law clerk that term was Dan Long. Martina Hinman served as a court staff member in the Gloucester County Civil Case Management Office.

In his state court case, DiPietro made numerous allegations against Newfield, Landis Title, Gould, Ballard Spahr, and Murphy. DiPietro's complaints were that those parties conspired to hold court hearings without him, conceal documents, perpetrate a bait and switch on him, engage in predatory lending, and defraud him. After extensive motion practice, DiPietro's case, at his request, was transferred to Cumberland County before Judge Richard Geiger. Judge Geiger entered summary judgment in favor of all the defendants. DiPietro filed a motion for leave to appeal, which the Appellate Division denied on August 25, 2011.

---

(explaining that the "court may take judicial notice of a prior judicial opinion").

4

On September 6, 2011, DiPietro filed his lawsuit here. He named as defendants Landis Title, Gould, Ballard Spahr, and Murphy, as well as Judge Anne McDonnell, her law clerk Dan Long, and state court employee Martina Hinman. Ballard Spahr and Murphy immediately filed a motion to dismiss, and DiPietro filed an amended complaint against the same defendants. DiPietro also filed a motion for a temporary restraining order and an injunction. The defendants opposed DiPietro's motion, and they all filed motions to dismiss DiPietro's amended complaint. DiPietro then filed a motion for leave to file a second amended complaint.[4] The proposed second amended complaint appears to be identical to DiPietro's amended complaint, except for the naming of Newfield National Bank and two of its employees as defendants.

The primary question raised by the pending motions is whether DiPietro's case here is an improper attempt to have this Court interfere with and overturn the state court proceedings. The Court finds that it is and therefore must abstain from considering DiPietro's case based on the principles announced by the United States Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), Younger v. Harris, 401 U.S. 37 (1971), and Rooker v. Fidelity Trust Co.,

---

[4] As noted, *supra* note 2, after DiPietro filed his motion for leave to amend his complaint, he filed documents against more state court judges seeking to have them criminally indicted and impeached.

5

263 U.S. 413 (1923) and District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).

## DISCUSSION

### A.     Jurisdiction

This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction to hear plaintiff's state law claims under 28 U.S.C. § 1367.

### B.     Motion to Dismiss Standard[5]

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light

---

[5] In addition to defendants' motions to dismiss, DiPietro's motions for an injunction and leave to amend his complaint are also pending.  Although the standards for analyzing an injunction motion and a request for leave to amend a complaint direct a court to consider various factors not required by the motion to dismiss standard, the first step in considering all three motions is assessing the viability of DiPietro's current claims.  See Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365, 377 (2008) (explaining that in order to obtain a preliminary injunction, a plaintiff must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest); Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (explaining that Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment--irrespective of whether it is requested--when dismissing a case for failure to state a claim unless doing so would be inequitable or futile").  Thus, because the Court finds that DiPietro's claims are not viable, no further analysis is needed to resolve DiPietro's motions.

most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the

'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30

(3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

**C. Analysis**

A comparison of DiPietro's claims in his amended complaint with the DiPietro's claims in his prior and ongoing state court proceedings shows that DiPietro is attempting to have this Court overturn state court judgments, interfere with the state foreclosure process, and otherwise relitigate claims that have

already been addressed in the state court.  Because this Court cannot serve as an appellate court to review state court findings, and because this Court cannot interject itself into ongoing state court proceedings, the Court must dismiss his case in its entirety.

Three abstention principles articulated by the United States Supreme Court apply to this case.  First, an overriding basis for abstention is the <u>Colorado River</u> doctrine.  Relevant to DiPietro's claims here, the Supreme Court in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976) explained that federal district courts may abstain from hearing cases and controversies under "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  The threshold issue that must be decided in a <u>Colorado River</u> abstention case is whether the two actions are "parallel cases [that] involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'"  <u>IFC Interconsult, AG v. Safeguard Intern. Partners, LLC.</u>, 438 F.3d 298, 306 (3d Cir. 2006) (citations and quotations omitted).

More specific than <u>Colorado River</u> is the <u>Younger</u> doctrine.  This doctrine precludes a federal court's intervention in ongoing state proceedings.  <u>Younger v. Harris</u>, 401 U.S. 37 (1971).  The

10

Younger doctrine applies when the state court proceedings are pending or ongoing, the state proceedings implicate an important state interest, and the state proceedings afford an adequate opportunity to raise constitutional issues. See Taliaferro v. Darby Tp. Zoning Bd., 458 F.3d 181, 192-93 (3d Cir. 2006) (citation omitted).

Once a state court proceeding has concluded, the Rooker-Feldman abstention doctrine applies when the relief requested in the federal court would effectively reverse a state court decision or void its ruling. Taliaferro, 458 F.3d at 193 (citation omitted). The application of the Rooker-Feldman doctrine is necessarily limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine, however, encompasses claims that were not only actually litigated, but also those that are "inextricably intertwined" with the adjudication by a state court. Id. (citations omitted). "[I]f a plaintiff's claim in federal court is inextricably intertwined with a previous state court adjudication, the district court lacks jurisdiction over the claim even if it was not raised in the state court." Id.

11

DiPietro's claims in this Court implicate all three abstention doctrines: (1) this case and his state court matters are parallel and substantially identical; (2) some matters are ongoing; (3) they implicate important state interests-- foreclosure of a property in New Jersey, the conduct of attorneys and judges in the state court, and the actions of a local bank and title company; (4) the state proceedings have afforded DiPietro an adequate opportunity to raise constitutional issues, as they were severed from his foreclosure action and continued as a separate case in the Law Division; and (5) to the extent that some of DiPietro's state court proceedings have concluded, his claims here are "inextricably intertwined" with those state court matters, in addition to having been actually litigated there.  In that case, DiPietro's proper recourse is not to file a separate action in federal court, but it is to appeal to the appropriate state appellate court, and ultimately to the United States Supreme Court under § 1257.  See Parkview Ass'n P'ship v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000).[6]

---

[6]     The Anti-Injunction Act also prohibits the federal courts from interfering with proceedings in the state courts: "A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

To the extent that DiPietro's complaint can be construed as requesting prospective injunctive relief against the state and the state court judges, the law provides a possible basis for

Consequently, because the Court must abstain from considering any of DiPietro's claims, including those in his proposed second amended complaint, his motion for injunctive relief and his motion for leave to amend his complaint must be denied, and defendants' motions to dismiss must be granted.

An appropriate Order will be entered.

Date: June 11, 2012                s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

that relief.  The judicial doctrine of Ex Parte Young allows suits against states in federal court seeking prospective injunctive relief to proceed only against state officials acting in the official capacities.  See Ex Parte Young, 209 U.S. 123 (1908).  The exception created by Ex Parte Young has been interpreted to allow suits against state officials for prospective and declaratory relief in order to end continuing violations of federal law.  Balgowan v. State of New Jersey, 115 F.3d 214, 217 (3d Cir. 1997); see also Doe v. Division of Youth and Family Services, 148 F. Supp. 2d 462, 483 (D.N.J. 2001).  This doctrine is not applicable, however, if "the relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter," and, as when the state or state agency itself is named as the defendant, "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984) (citations omitted).  The Ex Parte Young doctrine is not implicated in this case.

13